IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  05-cv-02079-WYD-BNB

TAMMY BROWN,

      Plaintiff,

v.

THE BOARD OF EDUCATION OF PUEBLO SCHOOL DISTRICT NO. 1;
KITTY KENNEDY;
JOYCE BALES; and
GREG SINN, in their individual capacities,

      Defendants.

---

## ORDER

---

THIS MATTER comes before the Court on both Defendants' Motion to Dismiss in Part [# 12], filed December 2, 2005 and Defendants' Motion for Summary Judgment [# 54], filed September 25, 2006.  For the reasons stated below, I grant Defendant's Motion to Dismiss in part and deny it in part, and I deny Defendants' Motion for Summary Judgment.

I.      DEFENDANTS' MOTION TO DISMISS IN PART

      A.      INTRODUCTION

Plaintiff Tammy Brown seeks relief under 42 U.S.C. § 1983, alleging that Defendants violated her constitutional rights of association, free speech, and to petition for redress, that Defendants retaliated against her for exercise of those rights, that Defendants denied her due process under the Fourteenth Amendment, and that they

breached her contract, tortiously interfered with her contract, and civilly conspired against her.  It should be noted that on January 30, 2006, Plaintiff filed her Opposition to Defendants' "Motion to Dismiss in Part" [# 27].  In this Response, Plaintiff states that she does not "assert claims under the Colorado Constitution and has voluntarily dropped these claims from the Second Amended Complaint.  Therefore, Defendants' Motion to Dismiss these claims is moot."  (Pl.'s Resp. at 14.)  She also clarifies that the tort claims are only pled against the individual Defendants—not against the School District.  Finally, Plaintiff states that she only seeks punitive damages from the individual Defendants, not from the School Board.  Defendants filed their Reply Brief in Support of Motion to Dismiss in Part [# 31] on February 14, 2006.

     Plaintiff was hired by the Board of Education of Pueblo School District No. 60 ("the District" or "the Board") on or about July 23, 2001, as an administrative secretary.  (Second Am. Compl. ¶ 10.)  After she was hired, Plaintiff joined her local employee association, the Pueblo Educational Support Personnel Association ("PESPA") or "the union"), a labor union recognized by Defendant District as the sole bargaining agent for District secretaries."  (Second Am. Compl. ¶ 15.)  Following her association with the union, Plaintiff alleges that Defendants Kennedy, Sinn, and Bales expressed negative attitudes and hostility towards school employee unions, towards PESPA, towards PESPA president Margaret Archuletta, and towards Plaintiff as a PESPA member and associate of Archuletta.  (Second Am. Compl. ¶ 18.)  Plaintiff alleges that after she joined PEPSA, she was criticized and harassed.  Plaintiff further alleges that Defendants altered her job responsibilities without following the proper contractual

process and without upgrading Plaintiff's title or compensation.

    B.    <u>STANDARD OF REVIEW</u>

In construing the motion to dismiss, the court "'must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'" *David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996), *cert. denied*, 522 U.S. 858 (1997) (quoting *Gagan v. Norton*, 35 F.3d 1473, 1474 n. 1 (10th Cir. 1994)). "A complaint may be dismissed pursuant to FED. R. CIV. P. 12(b)(6) only 'if the plaintiff can prove no set of facts to support a claim for relief.'" *Id.* (quoting *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir. 1995)). "A motion to dismiss under Rule 12(b) 'admits all well-pleaded facts in the complaint as distinguished from conclusory allegations.'" *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001)(quoting *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976)).

If, accepting all well-pleaded allegations as true and drawing all reasonable references in favor of plaintiff, it appears beyond doubt that no set of facts entitle plaintiff to relief, then the court should grant a motion to dismiss. *See Tri-Crown, Inc. v. Am. Fed. Sav. & Loan Ass'n*, 908 F.2d 578, 582 (10th Cir. 1990).

    C.    <u>ANALYSIS</u>

        1.    <u>Claims Against Defendant Kitty Kennedy (Qualified Immunity)</u>

Plaintiff has filed claims against Defendant Kitty Kennedy including violation of Plaintiff's First Amendment right to speech, her First Amendment right to free association, and her Fourteenth Amendment right to due process. Defendant Kennedy claims that "[a]t all times relevant to the Complaint, Ms. Kennedy was the President of

the Board of Education of the Pueblo School District No. 60 and a public official. (Compl. ¶ 8.)  The Defendants moved to dismiss these claims against Ms. Kennedy on the grounds of qualified immunity.  Specifically, the Defendants argue that Ms. Kennedy is entitled to dismissal of the constitutional claims against her in this case because Plaintiff has failed to allege that Ms. Kennedy committed any acts that violated Plaintiff's clearly established constitutional rights.  (Def.s' Resp. at 5.)

On December 1, 2006, the Court held an evidentiary hearing, and both parties agreed that this issue was subsumed by Defendants' Motion for Summary Judgment [# 54].  Accordingly, I deny as moot Defendants' Motion to Dismiss with respect to these claims.  This issue is further addressed in my analysis of Defendants' Motion for Summary Judgment.  (See Section II of this Order.)

          2.      <u>Claims against Defendant Board of Education (Municipal Liability)</u>

Plaintiff has filed claims against Defendant Board of Education including violation of Plaintiff's First Amendment right to speech, her First Amendment right to free association, and her Fourteenth Amendment right to due process.  The Defendants moved to dismiss these claims against the Board of Education on the grounds of municipal liability.  Defendant Board of Education claims that "[t]o hold the school board liable under § 1983, Plaintiff must demonstrate that her alleged civil rights violations were caused by the execution of official policy or custom.  *Monell v. Dep't. of Social Services*, 436 U.S. 658, 695 (1978)."  (Defs.' Mot. at 4.)

"'[I]n order to hold a municipality liable for an employee's constitutional violations, a plaintiff must show not only that a constitutional violation occurred, but

also that some municipal policy was the moving force behind the violation.'" *DeAnzona v. City and County of Denver*, 222 F.3d 1229, 1236 (10th Cir. 2000) (quotation omitted). The Supreme Court in *Pembaur v. Cincinnati*, 475 U.S. 469 (1986), made it clear that in addition to the imposition of liability on a municipality pursuant to an official policy or custom, as found in *Monell*, a municipality can also be liable for a single unlawful decision by one of its officials so long as that official "possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 481; *see also Sauers v. Salt Lake County*, 1 F.3d 1122, 1129 (10th Cir. 1993).

In the case at hand, Plaintiff alleged that the actions taken against her were pursuant to a board policy or custom. (Am. Compl. ¶ 82.) Additionally, Plaintiff alleges that the Defendant Board of Education delegated its final policy-making authority to Defendant Bales to terminate the employment of specific employees. Plaintiff further alleges that Defendant Bales exercised his authority when he terminated her employment, which was ratified by the Defendant Board of Education. (Second. Am. Compl. ¶¶ 72-75, 78.) Finally, Plaintiff alleges that Defendant Bales was acting in retaliation against Plaintiff for exercising her constitutional rights of free speech and association, and her Fourteenth Amendment right to due process of association and expression. Accepting all of the well-pleaded allegations of the Complaint and Amended Complaints as true and construing them in the light most favorable to the Plaintiff, I find that Plaintiff has established a claim of municipal liability of the Defendant Board of Education for violations of her Constitutional rights. Accordingly, Defendants' Motion to Dismiss these claims is denied.

### 3. Claims for Civil Conspiracy and Tortious Interference with Contract (CGIA)

Defendants argue that Plaintiff's claims for civil conspiracy and tortious interference with contract must be dismissed as to all Defendants based on the Colorado Governmental Immunity Act ("CGIA"). The CGIA requires that a claimant file a written notice of claim within 180-days after the "date of discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury." COLO. REV. STAT. § 24-10-109(1). Failure to file within the 180-day filing period creates an absolute bar to any claim. *Id.* Accordingly, the issue is when a plaintiff discovered or should have discovered the injury in order to comply with the statute. In *Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo. 1993), the Colorado Supreme Court held that the CGIA notice period is triggered upon discovery of the injury. *Id.* at 924. Further, when there are factual disputes regarding the discovery of the injury, the trial court is the pretrial fact finder and must hold an evidentiary hearing to resolve those issues. *Id.* Accordingly, on December 1, 2006, the Court held an evidentiary hearing regarding the Colorado Governmental Immunity Act ["CGIA"] notice requirement pursuant to *Trinity*.

Defendants argue that Plaintiff served her notice of claim on the Defendants on October 20, 2004. Therefore, the 180-day statutory period commenced on April 22, 2004. On December 2, 2005, Defendants moved to dismiss the civil conspiracy and tortious interference claims on the grounds that Plaintiff's notice was not timely filed because she had knowledge of her injuries as early as the fall of 2003. Defendants

-6-

argue that under *Gallagher v. Board of Trustees*, 54 P.3d 386 (Colo. 2002), the

Colorado Supreme Court ruled that:

> Discovery of the injury [for purposes of the CGIA] only
> requires that the claimant realize there is some injury; the
> person need not have determined the cause of the injury. In
> a whistleblower case, the factual issue to be determined is
> when the employee knew or should have known that she
> was being retaliated against for some protected conduct.

*Gallagher*, 54 P.3d at 388.

On the contrary, Plaintiff argues that her Notice of Claim, filed October 20, 2004, was timely as to both her termination (an injury of which she had no notice until after June 22, 2004) and to her deprivation of a pre-termination hearing before a neutral arbitrator (again an injury of which she had no notice prior to termination). Plaintiff asserts that *Gallagher* does not hold that a notice of claim must be filed upon the first retaliatory action to preserve the claimant's right to proceed upon retaliatory acts occurring within the notice of claim period. (Pl.'s Resp. at 3.) Further, the Colorado Court of Appeals found "implicit" in *Gallagher* that "a prior act of retaliatory conduct does not preclude a claimant from filing a valid notice of claim with regard to a subsequent act of retaliation." *Crandall v. City and County of Denver*, 143 P.3d 1105, 1110 (Colo. App. 2006) (cert. granted October 10, 2006). Finally, Plaintiff argues that while she knew that Defendants breached her contract prior to June 22, 2004, she did not know and could not have known of the tortious injuries of her termination and of the interference with her contractual rights to a neutral arbitration of her contract grievances until after that date -- the date on which she was terminated and deprived of income. (Pl.'s Resp. at 4.)

Based on the record before me, I find that any tort claim occurring before April 22, 2004 is barred by the CGIA. Under *Gallagher*, it is clear that the continuing violation theory does not apply to governmental immunity issues. *Gallagher*, 54 P.3d at 392. Further, *Gallagher* holds that discovery of the injury is not when the claim has fully ripened, but when the claimant has merely realized there is some injury. *Id.* Additionally, in *Crandall*, the Colorado Court of Appeals addressed the CGIA's notice requirement and found that the facts of the case were analogous to the facts in *Gallagher*. *Crandall*, 143 P.3d at 1105. The court held that "whether or not plaintiffs' recurring symptoms could be traced to one ongoing illness, each time a symptom recurred it was an injury within the meaning of the GIA . . ." *Id.* at 1110. Further, the court stated that "because the burden to establish notice under the GIA is relatively lenient, and the trial court's findings must be upheld unless clearly erroneous, we conclude that the court did not err in finding that plaintiffs' notice of claim was proper for any injuries suffered on or after February 2, 2002." *Id.*

In the case at hand, Plaintiff was terminated from her position on June 22, 2004. Plaintiff filed her governmental immunity notice claim on October 20, 2004. Therefore, based on the law set forth by the Colorado Court of Appeals and the Colorado Supreme Court, I find that any tort claim or injury occurring before April 22, 2004, is barred by the CGIA and cannot be considered by the Court for purposes of this case. The events leading up to Plaintiff's termination are time barred. However, notice is timely for Plaintiff's actual termination only. Accordingly, Defendant's motion to dismiss Plaintiffs' tort claims based on the CGIA notice requirement is granted in part and

denied in part.

### 4. Claims under the Colorado Constitution

Plaintiff no longer asserts claims under the Colorado Constitution and voluntarily withdrew these claims from the Second Amended Complaint. Therefore, Defendants' Motion to Dismiss claims under the Colorado Constitution is denied as moot.

### 5. Tort Claims against the District

Plaintiff states in her Response that she is not asserting any tort claims against the School District. (Pl.'s Resp. at 14.) Therefore, Defendants' Motion to Dismiss these claims is denied as moot.

### 6. Punitive Damages against the School Board

Plaintiff states in her Response that punitive damages are not pled against the Defendant School Board. (Pl.'s Resp. at 16.) Therefore, Defendants' Motion to Dismiss these claims is denied as moot.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. INTRODUCTION

In this Motion, Defendants assert that they are entitled to summary judgment on Plaintiff's claims against the Defendants including violation of Plaintiff's First Amendment right to speech, her First Amendment right to free association, her Fourteenth Amendment right to due process, and her breach of contract claim set forth in the Second Amended Complaint. Plaintiff filed her response to the Motion on November 21, 2006. A reply in support of Defendants' Motion was filed on December 22, 2006. The Court has reviewed the briefs and considered all arguments and

concludes that there are genuine issues of material fact regarding the matters raised in the Motion such that the Motion must be denied.

### B. ANALYSIS

#### 1. Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "When applying this standard, the court must 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

#### 2. Whether Summary Judgment is Proper on Plaintiff's Freedom of Speech Claim

I first address Defendants' assertion that summary judgment should be granted on Plaintiff's free speech claim. Plaintiff alleges that she was harassed, mistreated, disciplined and ultimately terminated from her employment in retaliation for exercising her right to free speech by speaking out against issues of public concern. (Second Am. Compl. ¶¶ 92-95.)

Under the law set forth in *Pickering v. Bd. of Education of Township High School District 205*, 391 U.S. 563, 574 (1968), the Supreme Court held that an employee who speaks out on issues of public importance may not be dismissed from public employment. "The threshold question in assessing the free speech claim of a discharged . . . government employee is whether the employee has spoken 'as a citizen upon matters of public interest' or merely 'as an employee upon matters only of personal interest.'" *Gardetto v. Mason*, 100 F.3d 803, 812 (10th Cir. 1996) (quoting *Connick v. Myers*, 461 U.S. 138, 147 (1983)). The First Amendment only protects speech that is of a matter of public concern, and where the speech does not qualify as public concern, the First Amendment claim fails. *Id.* "Matters of public concern are those which can 'be fairly considered as relating to any matter of political, social, or other concern about the community." *Gardetto*, 100 F.3d at 812 (quoting *Connick*, 461 U.S. at 146).

"While speech pertaining to internal personnel disputes and working conditions ordinarily will not involve public concern . . . '[s]peech that seeks to expose improper operations of the government or questions the integrity of governmental officials clearly concerns vital interests.'" *Gardetto*, 100 F.3d at 812 (quotation omitted). Further, the First Amendment does not protect "public employee criticisms of internal management decisions,' . . . []or public employee complaints about the structure of purely internal administrative bodies." Id. at 813-14. "In deciding whether to classify particular speech, courts focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader

public purpose." *Id.* at 812.

In the case at hand, the Defendants argue that Plaintiff's speech does not address a matter of public concern. Defendants claim that "[t]he contents of Ms. Brown's [Plaintiff] speech consist of a few conversations with a board member [Ms. Rodosevich] perceived as sympathetic . . . and the documents that she surreptitiously copied and delivered to her." (Defs' Mot. at 20.) Defendants assert that the documents at issue were limited to four cell phone bills, e-mails containing inappropriate language, and a thank-you note. Further, Plaintiff's statements that are at issue were made to one single individual regarding perceived improprieties by Plaintiff's supervisor. (Defs' Mot. at 20.) Finally, Defendants argue that Plaintiff's speech was motivated purely by personal reasons due to difficulties with her job and her relationship with her supervisor, and therefore, do not rise to the level of public concern. (Defs' Mot. at 21.)

On the other hand, Plaintiff argues that her speech implicates serious wrongdoing by her employers that rises to the level of public concern. Plaintiff disputes Defendants' claim that she expressed her concerns to Ms. Rodosevich only. Plaintiff alleges that she expressed her concerns to her supervisor, her co-worker, union representatives, and to Ms. Rodosevich. Further, Plaintiff alleges that Defendants have no factual basis for their assertion that Plaintiff's speech was motivated by personal reasons. Plaintiff alleges that she was an "above standard employee" based on evaluations and letters of reference from her employers. (Pl.'s Resp. at 37.) Rather, Plaintiff alleges that, through her speech, she was "attempting to protect the district's funds from financial improprieties . . . ." (Pl.'s Resp. at 37.) I find that there

are material facts in dispute concerning the motivation for Plaintiff's speech, making it impossible for this Court to determine whether matters of public or personal interest are implicated at this stage of the proceeding. Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's free speech claim is denied.

### 3. Whether Summary Judgment is Proper on Plaintiff's Freedom of Association Claim

The First Amendment freedom of association protects public employees from retaliation for participation in a union when the employers have signed a collective-bargaining agreement. *Butcher v. City of McAlester*, 956 F. 2d 973, 979 (10th Cir. 1992). A collective-bargaining agreement is evidence that a public employer has agreed to the terms of a union and its employee members. Therefore, an employee member is entitled to associate with the union or file grievances according to union procedures. *Id.* Further, the Tenth Circuit has held that "[t]he unconstitutionality of retaliating against an employee for participating in a union [is] clearly established." *Morfin v. Albuquerque Pub. Sch.* 906 F. 2d 1434, 1439 (10th Cir. 1990).

In this matter, Plaintiff alleges she was and is an active member of PESPA, a labor union. Plaintiff also alleges that she filed grievances, participated in union activities, advocated for the interests of PESPA members, and associated with school board PESPA members and the PESPA president. (Second Am. Compl. ¶¶ 97-101.) Further, as a direct result of her association with the labor union, Plaintiff alleges that she was "unfairly disciplined, intimidated, treated with disrespect, embarrassed and humiliated, reprimanded, undermined in her work, placed on administrative leave without good reason, made an example of, and ultimately terminated." (Second Am.

Compl. ¶ 102.)  Finally, Plaintiff alleges that the Defendants adverse actions toward her were due to her union association.  (Second Am. Compl. ¶ 103.)

First, the Defendants argue that they are entitled to summary judgment on Plaintiff's right to association claim because Plaintiff's working relationships with the PESPA president, Ms. Rodosevich, and two board members, Ms. Pacheco-Kovaleski, and Ms. Archuletta, are not constitutionally protected.  *Copp v. Unified Sch. Dist. No. 1*, 882 F.2d 1547, 1551 (10th Cir. 1989) (rejecting association claim based on close relationship between school custodian and school principal).

Second, Defendants argue that Plaintiff's participation at a rally supporting a colleague does not warrant constitutional protection.  *Morfin*, 906 F.2d at 1439 (showing one's support is not sufficient).  The right to association is only implicated when a plaintiff can prove she "actually assisted" in the pursuit of another person's complaints.  *Id.*

Third, Defendants claim that even if Plaintiff's union association is protected, Plaintiff failed to provide specific evidence that her association was the motivating factor behind the adverse employment actions taken against her.  *See Saye v. St. Vrain Sch. Dist. RE-1J*, 785 F.2d 862, 867 (10th Cir. 1986).  Defendants argue that the only alleged acts of retaliation that rise to the level of adverse employment actions are Plaintiff's placement on administrative leave and her termination.  The other evidence of disciplinary action including oral reprimands, threats of dismissal, and involuntary transfer do not constitute adverse employment action.  Further, Defendants contend that Plaintiff's union association was not the motivating factor for the adverse

-14-

employment actions against her. Rather, Plaintiff was placed on administrative leave and ultimately terminated for copying district documents without authorization, dishonesty, and inappropriate use of association leave.

Plaintiff alternatively argues that Defendants' characterization of her associations with the PESPA president and two board members as intimate human relationships is inaccurate and contrary to Defendants' previous testimony in this matter. (Pl.'s Resp. at 40.) Plaintiff states that "Defendants consistently testified they viewed Plaintiff's association with the two board members as political." (Pl.'s Resp. at 40.) Further, Plaintiff alleges that her only association with these people was through PESPA, and she only worked with them on the desk audit and her grievance process. Plaintiff claims that because she was politically aligned with persons that the Defendants viewed as politically diverse, she was wrongly retaliated against.

Additionally, Plaintiff argues that Defendants' characterization of her participation in the union rally as "merely support for a colleague" is different from Defendants' pervious statements. (Pl.'s Resp. at 40.) Defendant Sinn issued a written warning to Plaintiff for being "politically engaged, campaigning for an issue/person, and picketing on district time." There was never any mention of support for a colleague. (Pl.'s Resp. at 41.) Plaintiff further alleges that she attended the rally to picket against an unfair labor practice, not to support a friend. Consequently, I find that there are material facts in dispute concerning Plaintiff's associations making it impossible for this Court to determine whether Plaintiff's rights were violated as a direct result of her political associations. Accordingly, Defendants' Motion for Summary Judgment on

Plaintiff's association claim is denied.

### 4. Whether Summary Judgment is Proper on Plaintiff's Due Process Claim

The Due Process Clause of the Fourteenth Amendment provides that no state "shall deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend.  XIV, § 1.  The United States Constitution guarantees due process only when a person is deprived of life, liberty, or property.  *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994).  "[T]he Fourteenth Amendment was intended to prevent government 'from abusing [its] power, or employing it as an instrument of oppression.'"  *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 196 (1989) (quoting *Davidson v. Cannon*, 474 U.S. 344, 348 (1989)).  The core or "'touchstone of due process is protection of the individual against arbitrary action of government'... whether the fault lies in a denial of fundamental procedural fairness,... or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective."  *Id*. at 1716 (quotations omitted).  *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 1716 (1998).  Whether an employee has a protected property interest in his position is a question of state law.  *Lighton v. University of Utah*, 209 F.3d 1213, 1221 (10th Cir. 2000).

The Defendants argue that the Court should grant summary judgment because Plaintiff was terminated following hearings on her three grievances, and those hearings incorporated all of the grounds for dismissal.  Defendants further argue that Plaintiff's employment contract was limited to the 2003-2004 school year, and there are no District policies that create a claim of employment beyond the terms of her contract.

-16-

Additionally, the contract does not guarantee renewal or require that dismissal be "for cause." (Defs' Mot. at 28-9.)

Plaintiff, on the other hand, contends that her employment was governed by the PESPA Collective Bargaining Agreement. This Agreement "provides an employee may only be disciplined for just cause, and an employee has the full right to a grievance procedure, including arbitration." (Pl.'s Resp. at 43.) Plaintiff alleges that she was neither given notice nor opportunity to be heard prior to her dismissal. Further, Plaintiff "was denied the full remedy of her grievance process." (Pl.'s Resp. at 44.) Accordingly, I find that there are material facts in dispute concerning Plaintiff's due process claim making it impossible for this Court to determine whether Plaintiff was afforded the proper due process procedures. Therefore, Defendants' Motion for Summary Judgment on Plaintiff's due process claim is denied.

### 5. Whether Summary Judgment is Proper on Plaintiff's Breach of Contract Claim

Defendant argues that Plaintiff "failed to produce sufficient evidence to support her constitutional claims. Therefore, absent any independent grounds to support her breach of contract claim, it too is properly dismissed on summary judgment." (Defs' Mot. at 30.) However, Plaintiff claims that she has established sufficient facts that Defendants "willfully and wantonly breached" her contract. (Pl.'s Resp. at 48.) Further, Plaintiff alleges that she was both denied her right to arbitrate her grievances and was terminated without just cause. Based on the above analysis, I find that there are disputed issues of material fact regarding Plaintiff's breach of contract claim.

III. <u>CONCLUSION</u>

In conclusion, for the reasons stated above, it is

ORDERED that Defendants' Motion to Dismiss in Part [# 12], filed December 2, 2005, is **GRANTED IN PART AND DENIED IN PART** as described in this Order. It is

FURTHER ORDERED that Defendants' Motion for Summary Judgment [# 54], filed September 25, 2006, is **DENIED.**

Dated: February 1, 2007

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge